IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

GEORGE LEE TOMLIN,                )
                                  )
          Petitioner,             )    Civil Action No. 9:12-3258-MGL-BM
                                  )
v.                                )
                                  )
ALAN WILSON, SOUTH                )    **REPORT AND RECOMMENDATION**
CAROLINA ATTORNEY                 )
GENERAL'S OFFICE; LEVERN          )
COHEN, WARDEN OF                  )
RIDGELAND CORRECTIONAL            )
INSTITUTION,                      )
                                  )
          Respondents.            )
_____   )

This action has been filed by the Petitioner, pro se, pursuant to 28 U.S.C. § 2241. Petitioner is currently incarcerated in the South Carolina Department of Corrections at the Ridgeland Correctional Institution (FCI). Petitioner claims that he was denied his rights to parole hearings prior to 2010, that his constitutional rights have been violated by being denied a personal appearance before the board during his parole hearings when they were conducted, and that his rights have been violated by the parole board's applying certain criteria in its decision denying him parole.

The Petitioner filed a Motion for Summary Judgment on March 25, 2013, to which the Respondents filed a memorandum in opposition on April 2, 2013. Respondents also filed their own Motion for Summary Judgment on April 4, 2013. As the Petitioner is proceeding pro se, a Roseboro order was entered by the Court on April 8, 2013, advising Petitioner of the importance of a dispositive motion and of the need for him to file an adequate response. Petitioner was specifically



1

advised that if he failed to respond adequately, the Respondents' motion may be granted, thereby ending his case. Petitioner thereafter filed a response in opposition on May 10, 2013. On December 20, 2013, Petitioner filed a document which was captioned "second motion for summary judgment" and was docketed at that time as a supplement to his earlier filings. On December 27, 2013, Petitioner filed the same document.

These motions are now before the Court for disposition.[1]

### **Background**[2]

Petitioner pled guilty and was sentenced on or around on February 8, 1990, to thirty (30) years imprisonment for voluntary manslaughter, twenty (20) years for criminal sexual assault in the second degree (CSC 2nd), and five (5) years for possession of a weapon during a crime of violence. See Petition, p. 1; Respondents' Memorandum in Support of Summary Judgment, pp. 2, 5. The court ordered that these sentences be served consecutively.[3] Petitioner apparently did not appeal his conviction and/or sentence. If Petitioner did appeal, neither party has provided any records of an appeal and assert no facts which are relevant to this petition dealing with his parole hearings, which even under Petitioner's calculations were not due to start until over ten years after his

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e), D.S.C. The parties have filed motions for summary judgment. As these are dispositive motions, this Report and Recommendation is entered for review by the Court.

[2]Background facts set forth hereinabove are as represented by the parties. Although neither party provided the underlying records or cites to any records for the background facts, they do not appear to be contested.

[3]Respondents represent that Petitioner completed his sentences for possession of a weapon during the commission of a violent offense on June 24, 1994 and for CSC 2nd on May 24, 2004. See, Respondents' Memorandum in Support of Summary Judgment, p. 2, n. 1.



convictions. See Petition, p. 2. Respondents assert Petitioner did not initially appear before the parole board until March 17, 2010 due to the consecutive nature of his sentences.[4] At the conclusion of this hearing, the Parole Board decided to deny parole due to: 1) nature and seriousness of the current offense; 2) indication of violence in this or a previous offense; 3) use of a deadly weapon in this or a previous offense; and 4) prior criminal record indicates poor community adjustment. Cf. Court Docket No. 20-1 [Order of Administrative Law Court filed on November 5, 2010].[5]

Petitioner then filed a notice of appeal with the Administrative Law Court ("ALC") on April 13, 2010, asserting the following issues:

> **Ground One**: Appellant was denied due process and subjected to *ex post facto* violations by not personally appearing before the Parole Board;
>
> **Ground Two**: The criteria followed by the Department resulted in a violation of due process, equal protection, and the *ex post facto* clause;
>
> **Ground Three**: Appellant was denied due process of law by being subjected to an untimely parole release hearing; and
>
> **Ground Four**: Appellant has a due process liberty interest in parole release.

See Order of Dismissal, filed November 5, 2010 [Court Docket No. 20-1, p. 1].

On November 5, 2010, the ALC issued a decision affirming the Department's final decision. Id.

---

[4]Respondents further represent that Petitioner has since been denied parole again on July 11, 2012. Although neither party has provided additional information regarding hearings since that time, Petitioner's claims here deal only with the denial of parole hearings prior to his hearing on March 17, 2010, and with not being physically present at his parole hearings (instead, being allowed to participate by video-conferencing).

[5]This is what Respondents represent the Parole Board's findings were, and the parties do not appear to dispute that these were the reasons listed by the Parole Board for denying Petitioner parole. However, the parties did not provide the decision from the parole board itself, and the order issued by the Administrative Law Court cites only a summary of the reasons for the denial in 2010 and to statutes, rather than listing specifics. See Court Docket No. 20-1, p. 4.



Petitioner then appealed to the South Carolina Court of Appeals. However, the appeal was vacated and remanded on July 18, 2013, and on September 30, 2013, the ALC ruled that it had no authority to consider the appeal since it was a routine denial of parole, citing to Compton v. S.C. Dep't of Probation, Pardon and Parole Servs, 685 S.E.2d 175 (S.C. 2009), Cooper v. S.C. Dep't of Probation, Pardon and Parole Servs, 661 S.E.2d 106 (S.C. 2008), and S.C. Code Ann. § 1-23-600(D)(Supp. 2012)["An administrative law judge shall not hear . . an appeal involving the denial of parole to a potentially eligible inmate by the Department of Probation, Parole and Pardon Services."]. See, Order of Dismissal, Filed September 30, 2013 [Court Docket No. 28-1].[6]

In his Petition for writ of habeas corpus filed in this United States District Court, Petitioner raises the following grounds for relief:

> **Ground One:** Petitioner was denied the due process right(s) to timely parole release hearing or no hearing at all.
>
> **Ground Two:** Petitioner was denied due process relevant to parole release hearing and subjected to unconstitutional ex post facto law.
>
> **Ground Three:** Petitioner was subjected to ex post facto parole release criteria which denied due process and equal protection rights.

See Petition, pp. 2-3.

## Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

---

[6] Since the parties have not provided the underlying documents in this case and do not dispute the procedural posture of the state court filings, the undersigned has included hereinabove the procedural history regarding the state court proceedings as is set forth in the ALC's order filed September 30, 2013.

4



of law. Rule 56, Fed.R.Civ.P; see Habeas Corpus Rules 5-7, 11. Further, while the federal court is charged with liberally construing pleadings filed by a pro se litigant to allow the development of a potentially meritorious case; See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972); the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

## I.

The procedural history indicates that after a remand from the South Carolina Court of Appeals, the Administrative Law Court dismissed Petitioner's appeal finding that it had no authority to consider the appeal since it was a routine denial of parole. See Court Docket No. 28-1. Respondents represent to the Court that Petitioner has exhausted all of his state court remedies and present no argument that any issues are procedurally defaulted. Therefore, as Respondents have conceded exhaustion, the undersigned has reviewed Petitioner's claims on the merits. Gray v. Netherland, 518 U.S. 152, 165-166 (1996)[Procedural default is an affirmative defense which is waived if not raised by the Respondents].

## II.

Respondents argue in their motion, inter alia, that Petitioner's Ground One concerning his denial of parole hearings from 2003 to 2009 is subject to dismissal because Petitioner failed to file his application for a writ of habeas corpus in federal court within one (1) year following the exhaustion of his state court remedies. This limitations period is part of the AEDPA,[7] and runs, under

---

[7]Antiterrorism and Effective Death Penalty Act of 1996.



28 U.S.C. § 2244(d)(1), from the latest of -

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Furthermore, § 2244(d)(2) provides that,

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Petitioner claims he should have been eligible for a parole hearing in 2003, and has therefore been denied a liberty interest through his denial of access to parole hearings since that time, up until his hearing in 2010. Cf. Furtick v. S. C. Dep't. of Probation, Parole and Pardon Services, 576 S.E.2d 146, 149 n. 4 (S.C. 2003)[Noting that state parole statute does not create a liberty interest in parole, but does create a liberty interest in parole eligibility]. However, Petitioner concedes that he was informed of his parole ineligibility as early as 1996. See Petition, p, 2. Therefore, "the factual predicate of the . . . claim[] presented could have been discovered through the exercise of due diligence" in 2003, at the latest, triggering the one-year AEDPA statute of limitations. Zhan v. Wilson, No. 12-3052, 2013 WL 4500055 at ** 1, 9 (D.S.C. Aug. 19, 2013)[Finding that the date when Petitioner contended he should have been eligible for parole triggered the one year AEDPA statute of limitations]. Since Petitioner did not file this petition until 2012, after he had received his

6



2010 hearing, even assuming that the statute of limitations was stayed during the time that he was contesting the 2010 parole board decision in state court, his time for contesting the denial of any prior parole hearings had long since expired.[8]

In his response in opposition, Petitioner does not contest that his claim in Ground One is barred by the statute of limitations under § 2244 if it is applied to his petition, arguing instead that the time limitations in § 2244 are not applicable to a petition brought under 28 U.S.C. § 2241. See Petitioner's Response filed on May 10, 2013, p. 1. However, the § 2244 time limitations do apply in this case. See Ali v. Province, No. 11-5043, 466 Fed.Appx. 703 at **1 (10th Cir. Feb. 23, 2012)[Section § 2244 applies to § 2241 actions challenging the execution of a state sentence](citing Dulworth v. Evans, 442 F.3d 1265, 1268 (10th Cir. 2006)); cf. Wade v. Robinson, 327 F.3d 328, 330-331 (4th Cir. 2003)[One year limitations period applies to petitions under § 2241 challenging administrative decisions]; Peoples v. Chatman, 393 F.3d 1352, 1353 (11th Cir. Dec. 20, 2004)[finding § 2244 time limitations applicable to petitions under § 2241]; Dalton v. W.Va. Parole Bd., No. 08-1218, 2010 WL 395650 (S.D.W.Va. Jan. 19, 2010)[same]. Therefore, § 2241's one-year statute of limitations applies to the issue Petitioner raises in Ground One about being denied parole hearings from 2003 through 2009, and he has otherwise advanced no theory for how this claim may be considered.[9] Cf. McCraw v. McCall, No. 09-2787, 2010 WL 4340032 (D.S.C. Oct. 26,

---

[8] Assuming arguendo that Petitioner could have brought a claim after 2003 for each subsequent year when he did not receive a hearing, he would still have needed to bring that action within one year of not receiving a hearing, which would necessitate his habeas petition being filed on or before at least March 17, 2010 [one year after he failed to receive a hearing in March 2009], which he did not do.

[9] Neither party has provided the dates, if any, for Petitioner's direct appeal and PCR state court actions. However, this does not appear to be an issue since Petitioner was convicted in 1990 and does not contend that he was entitled to a parole hearing until 2003. Petitioner also has not presented any



2010)[dismissing a habeas petition as untimely under § 2244 where Petitioner was challenging the denial of receiving annual parole reviews].

Therefore, Petitioner's Ground One is time barred. Furthermore, even if this matter was not time barred, his claim with regard to not receiving a parole hearing prior to 2010 is moot, since it is undisputed that he began receiving parole hearings (which is the relief that he would be entitled to if he prevailed on Ground One) in March 2010. See Collins Music Co., Inc. v. IGT, 619 S.E.2d 1, 3 (S.C.Ct.App. 2005)[a matter becomes moot when judgment if rendered, will have no practical legal effect upon the existing controversy]. This claim should be dismissed.

**III**.

In Ground Two, Petitioner contends that his constitutional rights were violated when he was not allowed to personally appear before the board during his parole hearings when they were conducted in 2010 and 2012. However, prisoners have no constitutional right to parole; see Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1, 7 (1979); Cooper, 661 S.E.2d at 106 ("[p]arole is a privilege, not a right") (citation omitted); see also Barna v. Travis, 239 F.3d 169, 171 (2d Cir.2001) (in New York, prisoner "plaintiffs have no liberty interest in parole"); and the Fourth Circuit Court of Appeals has additionally cautioned that federal courts must allow state parole authorities wide discretion and must not involve itself in the merits of either the state's parole statute or its individual parole decisions. Franklin v. Shields, 569 F.2d 784, 800 (4th Cir.1977); Vann v. Angelone, 73 F.3d 519, 522 (4th Cir.1996).

Petitioner cites to Terrell v. United States, 564 F.3d 442 (6th Cir. 2009), in support of his claim that his due process rights were violated when he was not allowed to be physically present

---

evidence that he raised this issue in the state courts prior to his 2010 appeal.

8



for his parole hearing. However, in Terrell the Sixth Circuit found that a *federal* prisoner had a right to be physically present at his parole hearing because 18 U.S.C. § 4208(e)'s requirement that a prisoner shall be allowed to "appear and testify" required that parole determination proceedings be held in person. See also Morrow v. U.S. Parole Com'n, No. 12-700, 2012 WL 2877602 (C.D.Cal. Mar. 20, 2012)[granting injunction for federal petitioner to receive an in-person parole hearing pursuant to rights under § 4208]. However, that statute has no applicability in the present case, which involves a *state* prisoner and is based on South Carolina state law. Cf. Wilkins v. Timmerman-Cooper, 512 F.3d 768 (6th Cir. 2008)[State court's determination that use of videoconferencing technology for witness testimony at parole revocation hearing did not violate parolee's right to confront witnesses, did not violate due process, and was not contrary to or an unreasonable application of clearly established federal law]; Mayfield v. Hand, No. 07-1122, 2008 WL 2751341 (D.Colo. July 11, 2008)[No due process or equal protection claim where parole hearing was held via-video conferencing pursuant to state law]; Gooding v. Marberry, 341 Fed.Appx. 173 (7th Cir. July 20, 2009)[No due process violation where parole hearing was conducted for a D.C. inmate via video-conferencing]; Stanfill v. Michigan Parole Board, No. 09-12210, 2009 WL 2170142 at * 1 (E.D.Mich. July 20, 2009)[Distinguishing the decision in Terrell because that statute dealt with the term "appear" and concluding that conducting plaintiff's parole hearing by video conference was permissible under the state statute in that case which stated "shall interview" rather than "appear"].

In South Carolina, Section § 24-21-50 of the S.C. Code of Laws provides:

> The board shall grant hearings and permit arguments and appearances by counsel or any individual before it at any such hearing while considering a case for parole, pardon, or any other form of clemency provided for under law. No inmate has a right of confrontation at the hearing.



This statute was specifically amended in 1995 to add the provision that an inmate has no right of confrontation at the hearing. South Carolina has also enacted S.C. Code Ann. § 24-21-710(E)(Supp. 2008), which specifically provides in relevant part:

> (E)   The Department of Corrections may install, maintain, and operate a two-way closed circuit television system in one or more correctional institutions of the department that confines persons eligible for parole. The Board of Probation, Parole and Pardon Services shall install, maintain, and operate closed circuit television systems at locations determined by the board and conduct parole hearings by means of a two-way closed circuit television system provided in this section. A victim of a crime must be allowed access to this system to appear before the board during a parole hearing.
>
> (G)   The director of the Department of Probation, Parole, and Pardon Services may develop written policies and procedures for parole hearings to be held pursuant to this section.

Accordingly, under South Carolina law Petitioner is not entitled to the right of confrontation in a parole hearing, while state law also specifically allows parole hearings to be conducted by closed circuit television. See S.C. Code Ann. §§ 24-21-50 and 24-21-710(E). Since the statutes governing parole hearings do not grant inmates any entitlement to be present at parole hearings, Petitioner had no liberty interest in being present at his hearing. Rather, he has a right only to the hearing itself; Furtick, 576 S.E.2d at n. 4; where he "is entitled to only minimal procedure-at most, a statement of reasons for the denial of parole." Poore v. Underwood, No. 00–7036, 2001 WL 117505, at *1 (4th Cir. Feb.12, 2001) (citing Vann, 73 F.3d at 522). Petitioner does not dispute that he received his hearing, and has presented no evidence to show any violation of his rights. Wilkins v. Wilkinson, 809 N.E.2d 1206 (Ohio App. May 18, 2004)[Use of videoconferencing technology at parole revocation hearing sufficiently permitted parolee and his counsel to observe and confront witnesses]. See also, Court Docket No. 20-1, p. 2. Therefore, Petitioner has not shown a violation



of his rights by his parole hearings being conducted via video-conferencing.

Petitioner also contends that providing for his appearance via video-conferencing is an *ex post facto* violation because this procedure was not in place at the time of his conviction. "[A]ny statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with a crime of any defense available according to law at the time when the act was committed, is prohibited as *ex post facto*." Collins v. Youngblood, 497 U.S. 37, 42 (1990) (quoting Beazell v. Ohio, 269 U.S. 167 (1925)). Petitioner committed his offenses in 1988, and the statute regarding closed circuit television parole hearings did not come into effect until 1996. See S.C. Code Ann. § 24-21-710(E). However, Petitioner has made no showing that the definition of the crime with which he was charged changed or the punishment for his crime has been increased due to his having to participate in his parole hearing by video-conferencing. Petitioner has not presented or identified how any evidence and/or documents were compromised by the video-conferencing, or shown that the parole board members failed to consider any evidence and/or documents because of this procedure. Petitioner has also failed to even allege how he contends an in-person appearance in his case would have resulted in him receiving a more favorable outcome. Accordingly, Petitioner has shown no *ex post facto* violation on this basis. See Papps v. Kentucky Parole Board, 156 S.W.3d 303 (2004).

Therefore, Petitioner's Ground Two for relief is without merit and should be dismissed.

### IV.

In Ground Three, Petitioner contends that he has been subjected to *ex post facto* parole

11



release criteria, which violates his due process and equal protection rights. This claim relates to purported changes in parole criteria used by the Parole Board since his incarceration.

In Slezak v. Burtt, No. 07-661, 2008 WL 4308149 at ** 3-4 (D.S.C. Sept. 15, 2008), the Court addressed the issue of whether applicability of a statute amended after the commission of a defendant's crimes and which provided for new parole considerations or criteria was an *ex post facto* violation.

> The [Supreme] court recognized [in Garner v. Jones, 529 U.S. 244, 250 (2000)] that flexibility is needed for the states in dealing with parole procedures, but the *Ex Post Facto* clause guards against the danger that legislatures might 'disfavor certain persons after the fact." [citations omitted]. However, the court note[d]: "On the other hand, to the extent there inheres in *ex post facto* doctrine some idea of actual or constructive notice to the criminal before commission of the offense of the penalty for the transgression . . . we can say with some assurance that where parole is concerned discretion, by its very definition, is subject to changes in the manner in which it is informed and then exercised. The idea of discretion is that it has the capacity, and the obligation, to change and adapt based on experience. New insights into the accuracy of predictions about the offense and the risk to recidivism consequent upon the offender's release, along with a complex of other factors, will inform parole decisions." Id. at 253.
>
> The court agrees with the Magistrate Judge that the application of the amended statute [S.C. Code Ann. § 24-21-640] with the additional criteria established by the Board does not violate the *Ex Post Facto* Clause.[10] The statute did not change the crime with which the petitioner was being charged or the punishment for the crime. It merely gives the parole commission authority to formulate criteria for parole eligibility and such criteria "must reflect all of the aspects of this section." The requirement that the Commission formulate criteria accordingly did not change the criteria being used by

---

[10]In a somewhat similar case, the South Carolina Supreme Court in [Cooper, 661 S.E.2d at 113] found no violation of *Ex Post Facto* Clause. In Cooper, the plaintiff argued that, in creating the detailed factors pursuant to Section 24-21-640, after he had committed certain offenses, an *ex post facto* violation had occurred. The court found that the definition of the crime charged had not changed and that the punishment for the crime was not increased and that there was no *ex post facto* violation. The court did hold that the Parole Board's failure to consider all of the factors was arbitrary under the due process clause. The petitioner in the case at bar has not alleged that the Parole Board failed to consider all of the factors but rather that the law was *ex post facto* and that certain alleged procedural errors occurred at the hearing, as enumerated in the Report.

12



the Board but required that they be specifically set forth. The decision whether to grant parole was, both before and after the amendment of the statute, discretionary based upon consideration of many factors.

Here, Petitioner, like the petitioner in <u>Cooper</u>, argues that in creating and applying the detailed factors developed pursuant to Section 24-21-640, after he had committed certain offenses, an *ex post facto* violation occurred.[10] The Petitioner has not alleged that the Parole Board failed to consider all of the factors, but rather that the law itslef was *ex post facto*. However, the definition of the crime with which the Petitioner was charged has not changed and the punishment for the crime was not increased. Accordingly, Petitioner has shown no *ex post facto* violation by the enactment of the applicability of the factors in Section 24-21-640. <u>See</u> <u>Slezak</u>, 2008 WL 4308149 at **3-4; <u>Cooper</u>, 661 S.E.2d at 113 [Finding no violation of *ex post facto* principles in applying Form 1212 criteria to inmate whose crime was committed earlier].

Petitioner also contends that his equal protection rights were violated by the application of these factors. The United States Constitution does not allow any state to deny a person within its jurisdiction equal protection of the law. U.S. Const. Amend., XIV, § 1. However, to establish an equal protection violation, the Petitioner must show that similarly situated persons received disparate treatment. <u>TNS Mills, Inc. v. South Carolina Dep't of Revenue</u>, 503 S.E.2d 471 (S.C. 1998). Here, Petitioner has made no showing that other inmates convicted of voluntary manslaughter during the same time period have had different criteria applied to them. Therefore, this

---

[10]Section 24-21-640, which was in effect at the time of Petitioner's conviction, required the Parole Board to develop specific criteria to be examined and applied in parole hearings. The statute was amended in 1986 and 1990 to add, *inter alia*, that "[t]his criteria must reflect all of the aspects of this section and include a review of prisoner's disciplinary and other records." In response to this statutory directive, the Board promulgated a list of fifteen (15) factors or criteria, set forth in Form 1212, to be considered. <u>See</u> also Court Docket No. 20-1, pp. 3-4. It is the application to him of these criteria to which Petitioner objects.



issue is without merit and should be dismissed.

## Conclusion

Based on the foregoing, it is recommended that the Respondent's motion to deny habeas be **granted**, that Petitioner's motion to grant habeas be **denied,** and that this Petition be **dismissed.**

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

January 17, 2014
Charleston, South Carolina



14

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume<br>
United States District Court<br>
Post Office Box 835<br>
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

